## 'ARMOUR & CO. *v.* GUNDERSHEIMER.\*

CONTRACTS; SALES; FUTURE DELIVERY; IMPLIED WARRANTIES; PRINCIPAL AND AGENT; APPEAL AND ERROR.

1. In an action by a baker against a dealer in eggs growing out of the furnishing to the plaintiff by the defendant of bad eggs, a recovery cannot be had for the cost of cakes spoiled in their baking by the use of the bad eggs or the loss of the custom of those to whom the cakes were sold and who thereafter refused to deal with the plaintiff, where it appears that the foreman of the plaintiff knew the eggs were bad, but nevertheless used them in the baking of the cakes, the immediate cause of the loss to the plaintiff being the improvident act of his foreman and agent with whose act he was chargeable.

2. Where a dealer in eggs contracts with a baker to supply him for a year with eggs suitable for use in his business, there is an implied warranty that eggs furnished under such contract are in proper condition and suitable for the purpose for which they were intended, the rule of *caveat emptor* not applying to such a case, there having been no opportunity for an examination by the purchaser of the eggs before delivery; and the purchaser under such circumstances is entitled to go into the open market and purchase eggs at the most reasonable price for which he can obtain them and charge his vendor with the difference between the price paid and the contract price, and, where the vendor is a nonresident, the purchaser is not required to go beyond the local market for the purpose.

3. On a motion by the appellee to reform a judgment of this court which had reversed the judgment of the court below and had directed a new trial, in a suit upon several items of account, this court deciding that there could be a recovery for one of the items only, it appearing from

---

\**Sales—Implied Warranty.*—Implied warranty of fitness of property bought for special purposes, including articles of food, see the presentation of the authorities in editorial note to *McQuaid* v. *Ross,* 22 L. R. A. 187; implied warranty of quality in sales by description, see editorial note to *Murchie* v. *Cornell,* 14 L. R. A. 492.

*Breach of Implied Warranty.*—Measure of damages on breach of implied warranty, see editorial note to *Swain* v. *Schieffelin,* 18 L. R. A. 385.

a portion of the record in this court not printed and from an admission in the brief of the appellant that the verdict was made up of certain sums, on account of each of the several items of account, and that it was possible to segregate the disallowed items from that for which a recovery was held by this court to be proper, and the court regarding the case as one in which the parties under the circumstances should not be subjected to the delay and expense of a new trial, the judgment of this court was modified so as to remand the case, with directions to vacate the judgment appealed from and to enter judgment for the appellee for the amount of the item of claim for which he was entitled to recover, with costs, reforming and modifying the verdict, if need be, for that purpose; the costs of the appeal to be paid by the appellee.

No. 1364.   Submitted December 9, 1903.   Decided February 2, 1904.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on the verdict of a jury in an action to recover damages for breach of an implied warranty.          *Reversed and ordered to be modified.*

The COURT in the opinion stated the case as follows:

The proceedings in this cause were originally instituted before a justice of the peace. They were then removed, we presume by appeal, to the supreme court of the District of Columbia, where the cause was tried *de novo* by the court with a jury, and there was a verdict for the plaintiff, upon which judgment was entered.

It appears that the appellee, E. S. Gundersheimer, who was the plaintiff in the court below, is engaged in business in this city as a baker, having a place of business on Second street and a stand in the Center Market, where he sells cakes and other products of his bakery; that for the purpose of baking he uses large quantities of eggs; that the appellant, Armour & Company, stated to be a corporation, and apparently a corporation of some other State doing business in this District, is engaged, among other enterprises, in the collection and freezing of eggs for preservation, for which it makes contracts of sale, with agreement for delivery during the winter months, when such eggs appear to be most in demand by the bakers, and that the ap-

pellee purchased from an agent of the appellant several cans of frozen eggs, under an implied warranty that they were sound and fit for the use of the appellee in his business, when in fact they were unsound and unfit for such use, and the appellee was injured in his business by the use of them.

It seems that in May, 1901, an agent of the appellant sought the appellee, and offered to sell him eggs in cans for baking purposes to be delivered to him during the winter; that a contract was thereupon made between them; that this contract was evidenced by an order signed in duplicate by the appellee upon blank forms contained in an order book, presented by an agent of the appellant, one of the copies being retained by the appellee; that the contract was made upon the condition that the eggs should be of first-class quality, frozen eggs in cans; that the contract was to last for a year, and the eggs were to be delivered to the appellee at such times and in such quantities as the latter should require. Some time in or about the following winter—the precise time does not appear in the record, but it seems to be assumed to have been in December of 1901—two cans of frozen eggs were delivered by the appellant to the appellee at the place of business of the latter on Second street, where a foreman of the appellee was in charge, while the appellee himself was away attending to business at his stand in the Center Market. These eggs were not good; but they were used by the foreman in baking cakes during the day of their delivery. In the evening, when the appellee came home from the market, the foreman told him that the eggs were not in as good condition as the eggs which he had been previously using. The appellee says that he regarded the statement as a joke. He did not test the eggs or the cakes into which they were made himself, for the reason, as he said, that his sense of smell had been impaired; and the cakes were thereafter sold in the market. They were so bad that many of them were returned, and the appellee lost some customers in consequence of the fact, and was injured in his business.

Subsequently the appellee had other consignments of frozen eggs from the appellant, some of which were returned because they were bad, and Armour & Company received them back. The

appellee was compelled to go into the market and purchase other eggs for his business. Besides Armour & Company there was only one other person or firm dealing in frozen eggs in the District, and from that firm the appellee was unable to procure what he desired. He had to purchase fresh eggs from various persons at enhanced prices. Thereupon he instituted the proceedings against the appellant, Armour & Company, which are now before us for review.

His bill of particulars contains three items of claim: (1) The difference in the cost price between 50 cans frozen eggs at $4.25 per can and 10 cans of whites at $4.75 per can, which had been ordered from Armour & Company, and the price paid in open market for a quantity of case eggs bought, which difference is stated to have been $129.03; (2) the price of the cakes that had been spoiled, stated at $19.10; (3) damages from loss of customers stated to have been $150—in all, $298.13. The case was submitted to the jury under instructions from the court; and the jury returned a verdict for the plaintiff in the sum of $237, upon which judgment was entered. Upon exceptions by the defendant to the rulings of the trial court on the instructions requested, he has brought the case here by appeal.

*Mr. J. Miller Kenyon* and *Mr. J. S. Flannery,* for the appellant:

1. No implied warranty followed the delivery of the eggs. *De Witt* v. *Berry,* 134 U. S. 306, 312. Nor can a warranty be implied. *Chanter* v. *Hopkins,* 4 M. & W. 399; *Ollivant* v. *Bayley,* 5 Q. B. 288; *De Witt* v. *Berry, supra.* It was the duty of the plaintiff or his foreman to inspect the eggs, and not to use them if they were not good. *Barnard* v. *Kellogg,* 10 Wall. 383, 388; *Seitz* v. *Brewers' Refrigerating Co.* 141 U. S. 510, 518, 519; *Slaughter* v. *Gerson,* 13 Wall. 379, 383; *Pierson* v. *Crooks,* 115 N. Y. 539, 546; *Leavenworth* v. *Packer,* 52 Barb. 132; *Zabriskie* v. *C. V. R. R. Co.* 131 N. Y. 72; Mechem, Sales, vol. II. § 1392. The plaintiff cannot recover damages for any consequences resulting from the negligence of himself or his agent.

*Warren* v. *Stoddart,* 105 U. S. 224; *Fererro* v. *Telegraph Co.* 9 App. D. C. 455.

2. A mere assertion that the party will be unable to, or will refuse to, perform a contract, is not sufficient. It must be a definite, unequivocal, and absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made. For if he afterward continue to urge or demand compliance with the contract, it is plain that he does not understand it to be at an end. Benjamin, Sales, 1st ed. 424; 2d ed. § 568; *Dingley* v. *Oler,* 117 U. S. 490, 503.

3. The plaintiff wholly failed to show that he endeavored to obtain frozen eggs anywhere excepting in Washington. If the plaintiff could not have obtained frozen eggs in Washington, it was his duty to endeavor to purchase them in the next nearest market,—Baltimore or Norfolk,—and not buy an entirely different and more expensive kind of eggs and seek to charge the defendant with the difference in cost. If there is no market value for an article at the place where the plaintiff would be entitled to compensation, the value at the nearest market governs. In addition to this, the cost of transportation of the property to the place of compensation is usually added. *Grand Tower Co.* v. *Phillips,* 23 Wall. 471; 1 Sedgwick, Damages, 8th ed. §§ 246, 739.

*Mr. Charles H. Merrilat* and *Mr. Walter C. Balderston,* for the appellee:

1. There being a contract concerning an article intended for consumption as food, there would have followed, aside from the express warranty of Armour & Company's agent, that the eggs would be fit for appellee's baking business, an implied warranty of their fitness, and appellee and his foreman had a right to rely on that presumption and promise in the absence of actual knowledge to the contrary.

2. Quality necessarily was of the very essence of appellee's contract, and there being two breaches by delivery of bad eggs, he was entitled, especially after tendering himself willing still

to buy of appellant if furnished good eggs, to buy elsewhere and hold appellant for the difference. *King Philip Mills* v. *Slater & Sons,* 12 R. I. 82; *Zabriskie* v. *Cent. Vermont R. R. Co.* 13 N. Y. Supp. 735; *Smith* v. *Lewis,* 4 Ind. 98. In protecting himself, appellee, of course, must do all that a reasonably prudent and diligent man would do to reduce the damages. This appellee, as the record shows, did by seeking to buy frozen eggs of the appellant and also of the only other frozen-egg dealer in Washington. This shows ordinary diligence, which was all that was required. *Hammer* v. *Schoenfelder,* 47 Wis. 455. Frozen eggs are not an ordinary article of commerce, but a special and not commonly sold commodity. Had frozen eggs been an article for which there was a market the difference between the market price and the contract price would have been the measure of damages. *Parsons* v. *Sutton,* 66 N. Y. 92. But, there being no market for them plaintiff was entitled to obtain the nearest obtainable substitute needed in his business, cracked and other shell eggs, and recoup the extra price from appellant. *Hinde* v. *Liddel,* 10 Court of Queen's Bench, 265; *Bridge* v. *Wain,* 1 Starkies, Rep. 504; *Barries* v. *Hutchison,* 114 Eng. Com. Law Rep. 460; *Robertson* v. *Schumann,* 7 Hun, 79; *Miller* v. *Stein,* 55 N. Y. Supp. 765; *Parsons* v. *Sutton,* 66 N. Y. Rep. 98.

Mr. Justice MORRIS delivered the opinion of the Court:

It is unnecessary for us to go into any elaborate examination of the rulings of the trial court in this case. There was no testimony in the case on behalf of the defendant. The only testimony was that given on behalf of the plaintiff by himself and his witnesses. Upon that testimony we are very clearly of opinion that there should have been no recovery for the plaintiff in respect of two of the three items of his claim as set forth in his bill of particulars.

The plaintiff is necessarily chargeable with the act of his foreman in putting the bad eggs sold by the defendant into the cake that was made, although he himself was absent at the time and personally innocent of the transaction. The foreman knew the

eggs to be bad, for the cake into which they were put was bad in consequence of the eggs. That the cake was spoiled was the immediate result of the improvident act of the foreman; and the consequent loss is, therefore, chargeable to the appellee himself. Such consequent loss includes both the cost of the spoiled cake and the loss of the custom of those who thereafter refused to deal with the appellee. While the appellant more remotely contributed to the result, yet the immediate cause was the improvident action of the appellee's foreman and agent.

With reference to the first item of the appellee's claim we are equally clear in our opinion that the plaintiff is entitled to recover to some extent. The loss to which the plaintiff was put by being compelled to resort to the market for the purchase of such eggs as he could procure suitable for his purpose was the direct and immediate result of the defendant's failure to perform its contract. It is unnecessary to inquire whether the order signed by the plaintiff and accepted by the defendant in itself constitutes a contract. It is plain that there was a contract between the parties, perhaps partly oral and partly in writing, whereby the appellant was to deliver a certain class of eggs to the appellee on demand, and the appellee was to receive and pay for them at a certain, stipulated price. This was a sufficient contract for the occasion, and both parties acted upon it as such. Certainly when the appellant delivered the eggs under the order, it was no longer open to either party to say that there was no contract. So far as there might be delivery, there would undoubtedly be a contract *pro tanto*.

Now, that for goods furnished under such conditions there is an implied warranty that the goods are in proper condition and suitable for the purpose for which they are intended, is a proposition in our opinion too plain for argument. It is unnecessary to go *in extenso* into the doctrine of warranty, either express or implied. It is sufficient to say that, when one contracts to deliver a good article, suitable for the purpose for which it is intended, he cannot relieve himself from liability by furnishing a bad thing of the same kind wholly unsuitable for the proposed purpose. The rule of *caveat emptor* does not apply in this

case. It is not the case of articles exposed for sale which are fully open to the inspection of the purchaser, and which the purchaser is held to buy at his own risk. Here is an article contracted to be delivered at some future time, which the purchaser has no means of examining before it is delivered, which the vendor alone prepares and the character of which is known to him alone. It would be futile to argue that the sale of such an article is not accompanied by an implied warranty that it is the thing which was contracted for.

The thing which was delivered in the present case was not that for which the plaintiff had contracted. It was utterly unsuited for the purpose for which it was intended. The plaintiff, therefore, was entitled to go out upon the open market and purchase the proper article at the most reasonable price for which he could procure it, and charge the defendant with the difference of price. Nor was he required by reason or by any rule of law to go beyond the local market for the purpose. There is no authority that holds the contrary.

We greatly regret to be compelled to reverse a judgment in a case of this kind. If the verdict of the jury had been such as that we might infer from it how much of their allowance was based upon the two items of claim for which we hold that there can be no recovery, we might possibly reform or modify the judgment. But we have nothing on which to base such a modification. Both the verdict and the judgment stand as a whole.

For the reasons assigned the judgment must be reversed, with costs, and the cause remanded to the supreme court of the District, with directions to award a new trial; and it is so ordered.

*Reversed.*

---

Thereafter the appellee, by *Mr. Merrilat* and *Mr. Balderston*, filed a motion to modify and reform the judgment of the court.

The motion was, on the 1st day of March, 1904, granted, Mr. Justice MORRIS delivering the opinion of the Court:

A motion has been filed in this case on behalf of the appellee

to modify and reform the judgment of the court, which was for a new trial of the issue between the parties.

The suit was upon three items of account, which were these: (1) The difference between the cost price of certain eggs agreed to be delivered by the appellee to the appellant, and which were delivered in a condition unfit for use, and the market value which, upon the appellee's default, the appellant was compelled to pay for the necessary supply of eggs in the open market, amounting to $129.03, as claimed in the original bill of particulars; (2) the price of some cakes that had been spoiled by the improvident use of some of the appellee's eggs, amounting, as claimed, to $19.10; and (3) damages from loss of custom resulting from the sale of cake made with the unfit eggs, amounting to $150. We held that, under the testimony in the case, there could be no recovery for the second and third of these items, but that there might be a recovery for the first item. We held, also, however, that, as the jury had found a verdict for the undivided sum of $237, and there was nothing in the record to show which items had been allowed or how much had been allowed upon any one item, we were unable to modify or reform the judgment, and were compelled to direct a new trial.

Now, however, in the motion for a reformation of the judgment, our attention has been called to the fact, which appears in the record but not in the printed transcript, that, before the trial in the court below the demand of the appellee upon the first item had been reduced from $129.03 to $118; and that it has been admitted by counsel for the appellant in his brief that the verdict of the jury for $237 was made up of $118 on account of the first item, $19 on account of the second item, and $100 on account of the third item. It seems to be possible, therefore, to segregate and eliminate the last two items from the verdict; and regarding the case as one in which the parties should not be subjected to the delay and expense of a new trial, we think that the motion for the reformation of the judgment should be allowed.

The cause will be remanded, therefore, to the supreme court

of the District of Columbia, with directions to vacate the judgment heretofore entered in that court for $237 in favor of the appellee, and thereupon to enter a judgment on behalf of the appellee for the sum of $118, with costs, reforming and modifying, if need be, the verdict of the jury for that purpose. The costs of the appeal are to be paid by the appellee; and it is so ordered.

*Judgment reversed and ordered to be modified.*